argument is United States v. Kenneth Patterson. Mr. Gunn, good morning. Good morning, Your Honors. Carl Gunn, appearing for Mr. Patterson. I'm going to try to save two minutes of my time for rebuttal. Sure. The question here isn't whether Mr. Patterson will be punished. The question is how much he'll be punished. The question is whether he and his fraud are different enough that he deserves twice as much time in prison as he would without the enhancements. The answer to that question is he isn't different enough and he doesn't deserve twice as much time. I'll start with the sophisticated means and abusive position of trust enhancements, unless the court wants to direct me elsewhere. On sophisticated means, the government doesn't give you a single case with facts like this case, frankly with facts even close to this case. Every case the government points to and every other case applying the enhancement had things like multiple forged or counterfeit documents, using other people to hide where money was going, funneling money through multiple bank accounts to hide where it was going. I quote the case's descriptions in my opening brief and in my reply brief. It's things like doctoring existing documents, creating false invoices and falsified carbon copies of checks, fraudulent brand certificates, using a bank account with a deceptive name, a complicated and fabricated paper trail. So it looks like what the district court focused on was the amount of time it took. It was like a two and a half years, was it? Well, there were 15 checks over two and a half years. And he managed to concoct a scheme to get those payments without, I guess, the victim raising serious questions. Correct, but it was not sophisticated in any way. All it was was basically telling different aspects of the lie about being on the verge of acquiring the skilled nursing facility. And there's not a single case, Your Honor, that says that's enough. The cases that find sophisticated means base it on the sorts of things I just described. You have nothing like that here. You have Mr. Patterson dealing directly with Ms. Kwan under his own identity. You having her make out checks directly to him or his businesses, except in one instance where he has her counterfeit documents. The only documents you have are these memorandum of understanding, but those are in his name and her name. It just is a written way of conveying the misrepresentation. Who drafted the memorandum of understanding? Mr. Patterson did. But it's not like a counterfeited check or a fake carbon copy or a fake invoice or that kind of thing, or doctoring a real document. And that's what the sophisticated means cases focus on. Not a single case finds sophisticated means based just on this. So I just don't think there's any precedent for applying that adjustment in these circumstances. If multiple misrepresentations or telling the lie multiple times was enough, you'd have this enhancement in every multiple count case. But that's clearly not suggested by the law. There's also the abuse of position of trust enhancement that I would submit should not apply here. First of all, I don't think you can really say there's a position of trust even in the original Small Business Administration loan transaction here. Mr. Patterson was what's in the description sounds like a ministerial task. And the government provided no evidence that it was something more. But worse, Your Honor... The district court and the government seem to refer to him as a loan broker. And that's incorrect. If you look at the pre-sentence report, and I cite the paragraph in my... Her quote, loan broker, unquote, referred her to him to do the documents packaging. And there's an SBA regulation that refers to packagers. It's a role that people have with SBA loans because they get experience in what I guess the SBA wants and what the banks who are doing SBA loans want. But you don't even need to go there, Your Honor. Why isn't that a position of trust? And I recall fairly early, maybe the introduction to your opening brief, you give some quotations from some of his other satisfied customers. And without him, without his experience and knowledge, I couldn't have realized my dream. Because this enhancement focuses on skills and people like attorneys, doctors, things like that, and focuses on having managerial or professional discretion. The government never showed... Given one financial advice here, financial recommendations, so that she could continue to provide money for this scheme? No, I don't think he gave her financial advice. What he did is he misrepresented, Your Honor, that he was on the verge of acquiring this. And then he told various nuances to that to keep her giving him money, like he had to pay off certain things to make the transaction go through. But he wasn't giving her financial advice. I'd refer the court to the district court's own description of this. That's at opening brief 19, I quote it. The purchase of the skilled nursing facility, that was just a straight business deal that had nothing to do with SBA loans, nothing that he was in a position of trust on. They were just two people reaching an independent agreement on an investment that you know they would engage in. The whole concept of this abuse of position of trust guideline is that it's more culpable when you have a fiduciary duty towards somebody, and then you violate that fiduciary duty. There was no fiduciary duty, certainly, with respect to this second transaction a year after the SBA transaction. That was an arm's length transaction, just like the district court described it. The government points, the government doesn't even try to, the district court just relied on him holding himself out as being knowledgeable and expert and a successful businessman. But fraud people do that all the time. That's not saying I have a fiduciary duty to you. The government argues, well, gee, he pretended to have a fiduciary duty to the skilled nursing facility. But you have to have a fiduciary duty to the person you're defrauding. Maybe you have a fiduciary role with some other person who's not the person you're defrauding. What was the time difference? How long after she had successfully obtained the SBA loan that they then initiated the transaction over the nursing care facility, the SNF, a year? We might have a difference. Was there any evidence of any ongoing relationship during that one-year period? I don't believe so, Your Honor. I don't believe so. There was evidence that she had at some point expressed an interest in getting into the skilled nursing home business at some point, and then he came back to her a year later saying, hey, I'm misrepresenting that he had this deal. And actually, it may have been, as the way the district court put it was he had no more than a wing and a prayer suggesting that maybe he hoped to somehow make this happen. But on the other hand, it was clear he used the money for other things. I will save the remaining time for rebuttal unless the Court wants me to direct something else right now. Not at the moment. Thank you. Good morning, Your Honors. May it please the Court. Alex Dempsey, representing the United States. I'll begin with discussing the sophisticated means, since that's where we started in the opening argument, and then I will move to discussing position of trust. Happy to move to anything else Your Honors would like at any time. With regards to the sophisticated means enhancement, I think it's important to acknowledge at the standard of review is for abuse of discretion. I think here that the Court's finding that, I quote, this was an especially intricate offense, end quote, that went on for years is the exact kind of complex scheme that's contemplated by 2B1.1 application of kind. What do you think is the case that most strongly supports what the district court did here? Because, I mean, I just don't see this as particularly sophisticated myself. Your Honor, I think Aguirre is probably the one that's most closely related, and their defense counsel raised this objection that that was just a long-term multi-penny anti-fraud type transaction with fuel cards. And the government would argue that this is an even more complex fraud than that. This is someone who has held himself out as a loan broker who continues to... Why do you call him a loan broker? I call him a loan broker, Your Honor, because he brokered loans. As noted in the PSR, he brokered the SBA loan. Did he have a license to be a loan broker? You do, Your Honor. Did he have a license to be a loan broker? He did not. The actual thing here is... The district court didn't call him a loan broker. That's... I do not know if they directly call him a loan broker, Your Honor. That might be correct.  The district court calling him a loan broker? There's two issues here, Your Honor. One is whether or not he actually was a loan broker, and then the other is whether or not he held himself out as a loan broker. Let me ask you this. Was he engaging as a loan broker when he worked out this deal over the nursing home? The government's position is that he held himself out as a loan broker, not that he actually was a loan broker. And the fact that he held... But what about the nursing home transaction? I don't see anything involving... anything resembling a loan broker. He was holding himself out as the loan broker of the skilled nursing facility, as he was the person who was approached to refinance their loan. And that's outlined in... But he was acquiring it himself. How does that make him a loan broker? That is a separate thing from the fact that he came on with them to refinance the loan. With who? The skilled nursing facility. He was there originally. For who? Who is he... If he's a broker, who is he representing? At that point, he claimed to be representing the skilled nursing facility. That's how he justified where he was able to obtain their taxes from, and how he originally learned about this. He told Ms. Kwan, the victim, that he was brought in to refinance their action, had him as their loan broker. So not only did he have this original position of trust with Ms. Kwan, with the SBA loan, he also had this position of trust with the skilled nursing facility. And that is actually what is most important here. The argument that you have to... I apologize, but I'm... I'm not... I'm missing something. Because the skilled nursing facility was selling. It would be the buyer who would have a loan broker. Who was the buyer he was representing? I agree, Your Honor, that this doesn't seem to make sense as to why he would have also been their loan broker, but that is what he told Ms. Kwan. That is what he represented. He represented that he was their loan broker. He was brought in to refinance a loan. That is outlined in paragraph 28 of the PSR. It was never objected to. That is simply a fact of this case. That is how he then justified how he got their tax documents, which is what he used to continue perpetuating and concealing this fraud from the victim. Whether or not he actually... But he didn't say... She says, well, help me find a loan so I can buy the nursing facility. That's also correct, Your Honor. He says to her, I can buy it. And you loan me the money, I'll buy it. And everything will be hunky-dory. After it's paid off, I'll sell it to you. We'll make a deal. We've got a deal here. And they signed a memorandum of understanding. That just seems like he was out to defraud her. I agree that he was just out to defraud her. And I also agree that the way he presented these facts do not make traditional logical sense about what a loan broker is. But whether or not he actually is a loan broker is irrelevant. As this court is held and USV grows, whether or not the fraudster was actually a bonafide position of trust doesn't change the analysis of whether or not the victim believed he was in a position of trust. And therefore, because he was able to execute that fraudulent scheme with that experience, the abuse of position of trust enhancement applies. We may have blended sophisticated means and position of trust together. You wanted to focus on sophisticated means as well? Happy to do both. And I do agree that they do tend to blend together in this. However, I think with the sophisticated means, the court asked opposing counsel whether or not it was just an issue of length. I would agree with the opposing counsel that just a long fraud is not enough to necessarily justify sophisticated means. However, this was 15 separate payments as acknowledged by Patterson to different individuals, one individual and then his different bank accounts over two and a half years. They involve these fraudulent memorandum of understandings, which were drafted by Patterson, included material falsehoods, included some of these sophisticated falsehoods that he was using to both induce the fraud and then also to conceal it in the after effects and continue these payments. And he even went out and got that document notarized. These types of complex intricacies fit directly into what Application 9 is addressing. Is this the most complicated fraud in the history of fraud cases? No. But it is enough that the district court's analysis is not an abuse of discretion. Finally, I wanted to address, at least briefly, the issue with the tax restitution, unless the court has no questions about that. The standard of review issue there is critical. The government's position is that Yijun Zhu has shown that any time there is a mixed question of law and fact, that this court must use the plain error analysis. And that is the analysis that we would urge you to consider using here. Under that analysis, there is no plain error here. The first issue of whether or not the proper statutory citation was used, the district court there used an expansive statement, specifically calling all additional statutory authority that could be used. He also put in a condition of supervised release, acknowledging that the difference between the Title 18 and Title 26 offenses in restitution were important. And I think that the decision in Pearson, which also used plain error analysis, forecloses the idea. As I recall, the district court ordered him to pay restitution to the state of California. He did. So that's the second issue. How does that come into play? That's the second issue, Your Honor, and that is a more complicated one. On the issue of ordering restitution to the state of California, the United States would concede that that is error. However, it is not plain. Patterson was explained that this was the restitution amount. The restitution attachment very specifically listed which amounts were to the IRS and which were to the state tax board. Go ahead. Had no objections. He went through. They went through. They had some issue with one of the calculations. We fixed that. And then the court, during sentencing, said, is this correct? Do you approve this restitution and this attachment? And Patterson said, yes. On those facts, this is not plain error. He could have objected. He could have said, well, look, this is not plain error. Plain error always comes up in circumstances where somebody didn't object. So you're basically trying to wave goodbye to the doctrine. But that's not what we should be doing here. So if you've acknowledged the error, seems pretty clear to me, why isn't it qualifying as plain error? Because, Your Honor, I think when all parties get to consider that fact and the answer because plain error only comes up in the context where defense counsel fails to make the objection. So telling me defense counsel didn't object doesn't tell me anything other than plain error is the standard that applies. And it's not the rule that there's never plain error because defense counsel didn't object. So you've got to give me something more. Your Honor, I think it's because there were facts in this case that could have linked the tax fraud on the state end just in the fact that it was part of the same scheme. However, I do agree that that is incorrect and should not have been the justification by the district court, but I believe it could have been. And for that reason, I think this doesn't rise to plain error. If, however, this Court disagrees, the United States would urge that any remand on restitution issues be limited strictly to correcting the restitution issue and none of the other aspects that have been brought up. Well, I don't understand the first part, either, because you're saying it's a proper condition for supervised release, but he was ordered to pay immediately, not upon release. So how can it be a condition that goes into effect well before supervised release comes along? May I answer, Your Honor? Please. He was ordered to do both. He has Title 18 restitution in this case and Title 26 restitution. And so the Title 18 restitution is due immediately, and so that order was proper. The Title 26 restitution is only appropriate upon supervised release, and so that's why you need a separate supervised release requirement in the judgment and commitment order, which was present. Okay. Thank you, Your Honor. Counsel. Your Honors, I've got about six notes here in my margins to respond to. First of all, Judge Thomas, you asked what the prosecutor's strongest case was on the sophisticated means, and he said Augere. I'd like to read what it was in Augere. Augere sent money from the POCOP project to one of his co-defendants for services allegedly rendered to the POCOP project. The co-defendant then donated half of the money back to a children's charity using checks that were shipped to the POCOP project's offices and closely guarded by the project's directors, including Augere. Then Augere, who controlled the children's charity account, withdrew the donated money and disposited it into his personal bank account. That's the sophistication of creating this circle to hide where the money was going and how the defendant was getting it. We don't have anything like that here. Everyone knew Mr. Patterson was getting the money. It was either going to him or his own businesses. In one instance, it went to another person whom he asked the check to be written to. There was none of that sort of sophisticated hiding here. Your Honors asked about whether he hailed himself out as a loan broker. Look at paragraph 18 of the pre-sentence report. That's the paragraph I'm talking about. It says, their loan broker, the Kwan's loan broker, recommended Patterson for the small business document packaging. They already had a loan broker. Patterson, my client, was recommended for the documents packaging. The prosecutor emphasizes, oh, he said he was a loan broker for the skilled nursing facility, so maybe he had a fiduciary duty to them or a position of trust with them. They weren't the victim. Having a fiduciary duty to someone else doesn't create the abusive position of trust. It's having a fiduciary duty to the victim. Whatever relationship he had with the skilled nursing facility, which if you read the pre-sentence report, I think is far less clear than the prosecutor would like you to think, he didn't have it as to the victim here. Fifteen different payments to different individuals. I think I heard that. No. Every payment except one was made to Mr. Patterson or his business. In the other instance, it was made to a person he asked Ms. Kwan to give it to. It was crystal clear to her who she was giving the money to and what the money was for. Okay, Mr. Gunn, your time is up. Red light is on. Thank you, Mr. Gunn. Maybe there's a job for those cable TV ads where somebody has to give all the disclosures in the last five seconds of the ad. Good work. Sorry if I was talking too fast. No, that's okay. That's okay, Mr. Gunn. You're a little enthusiastic. That's fine. Okay, thank you, counsel. We appreciate your arguments this morning. The matter is submitted at this time.
judges: PAEZ, CLIFTON, THOMAS